OPINION
Plaintiff, Denece Garrett, now Denece Kavanaugh, appeals an August 17, 1999 decision of the Franklin County Court of Common Pleas, Division of Domestic Relations, granting defendant, Ronald Garrett, $6,350.03 reimbursement for overpaid child support.
Plaintiff filed a complaint for divorce from the defendant on October 24, 1994. In January 1995, the trial court, through one of its magistrates, entered the first of two temporary orders. The first order set the defendant's child support payment obligation at $1,630.08 per month, and was originally effective December 1, 1994, "until modified by Journal Entry." After the first order was issued, defendant filed a Civ.R. 75 motion for an evidentiary hearing. As a result of that hearing, the magistrate issued a second temporary order in which he found that the defendant had continued to pay the debts of the parties between December 1, 1994, and January 15, 1995. Thus, the magistrate changed the effective date of the first order to January 15, 1995. The magistrate also found that as of May 1995, plaintiff no longer worked outside of her home. Given the change in the plaintiff's employment status, the magistrate reasoned that employment-related child care expenses were no longer necessary. As such, the magistrate reduced defendant's child support obligation from $1,630.08 to $1,045.33 per month, effective May 1, 1995. In summary, the temporary orders set defendant's child support obligation at $1,630.08 from January 15, 1995, to April 30, 1995, and $1,045.33 from May 1, 1995, to the date of the parties' divorce decree.
The plaintiff and defendant were divorced pursuant to a jointly drafted separation agreement adopted by the trial court on October 25, 1996. As provided for by the parties, the court's temporary orders were specifically, and explicitly, incorporated into the divorce decree.
On January 10, 1997, the Franklin County Child Support Enforcement Agency ("FCCSEA"), conducted an administrative hearing to determine the amount of the defendant's child support overpayment. After a hearing, an FCCSEA examiner issued a decision in which he found that defendant had overpaid his court-ordered support obligation by more than $7,000. Neither party questioned the FCCSEA decision, and the trial court adopted same on June 19, 1997.
On March 27, 1997, defendant filed a motion seeking to liquidate his overpayment by way of a credit against his future monthly child support payments. The plaintiff contested defendant's motion, and on September 23, 1998, the magistrate recommended that defendant's overpayment of $7,134.03 be liquidated by temporarily reducing the defendant's support obligation by $100.48 per month for seventy-one months. Shortly thereafter, plaintiff filed a request for findings of fact and conclusions of law, and the matter was returned to the magistrate.
On October 22, 1998, the magistrate issued an amended decision which included only minimal findings of fact and conclusions of law. Accordingly, the trial court again returned the matter to the magistrate. The magistrate then issued a second amended decision in which he concluded:
 On 1/19/95 this Court established the temporary child support obligation of the Defendant (by judgment entry) to be $1,630.08 per month, plus processing charges, effective 12/1/94, for the three minor children of the parties. On 10/6/95, this Court modified the temporary child support obligation of the Defendant to be $1,045.33 per month, plus processing charges, effective 1/15/95, for the three minor children of the parties. The marriage of the parties was terminated by an AGREED JUDGMENT ENTRY AND DECREE OF DIVORCE (filed 10/25/96 and effective 6/18/96) which set the Defendant's post-decree child support obligation in the amount of $700.00 per month, plus processing charges. That decree also contained the following language:
 "20. The Temporary Orders of the court are hereby incorporated by reference into this Decree of Divorce. (DECREE of 10/25/96, p. 17)"
 On 3/27/97, the Defendant filed his motion for a credit against his post-decree child support obligation, based upon his overpayment of temporary child support. The Plaintiff's motion to dismiss and the Defendant's motion to dismiss Plaintiff's motion to dismiss, followed.
 It is found that the Defendant overpaid his temporary child support in the amount of $7,134.03 for the period from 12/1/94 until 6/18/96 (the period from the filing of the Complaint until the effective date of the Decree). This amount was confirmed by the uncontroverted testimony of the Defendant (Trans. p. 20), and based upon a determination by the Franklin County Child Support Enforcement Agency of the Plaintiff's actual arrearage for the period in question (Trans. p. 23). At no time did the Plaintiff testify to a different amount, nor did she establish facts showing that this amount was erroneously calculated by the Defendant or by the CSEA. * * *
 * * * The Plaintiff could have challenged the temporary child support order before she signed an AGREED JUDGMENT ENTRY AND DECREE OF DIVORCE. She did not, even though she knew of the pre-decree reduction approximately eight months before her final divorce hearing (Trans. p. 59), and her failure to do so removes that issue from controversy.
* * *
 It is found that the language of the AGREED JUDGMENT ENTRY AND DECREE OF DIVORCE (filed 10/25/96 and effective 6/18/96) which appears at item 20 and is cited above, is sufficient to preserve the claim of the Defendant to the overpayment of his child support. Further, it is found that it is equitable that the Defendant receive credit for his overpayment by a temporary adjustment of his child support payment in the amount of $100.48 per month.
On August 17, 1999, the court issued a judgment entry which adopted in part, and rejected in part, the recommendation of the magistrate. The trial court agreed with the magistrate that the temporary support orders had been specifically incorporated into the parties' divorce decree. The court also agreed that the gross amount of overpayment, the difference between what the defendant was required to pay under the temporary orders and the amount which was actually withheld by the FCCSEA, amounted to $7,134.03. However, the court reduced the amount owed to the defendant by $784, an amount previously paid by the plaintiff to the defendant. Accordingly, the trial court calculated the defendant's post-credit overpayment to be $6,350.03.
The trial court also disagreed with the manner in which the plaintiff would be required to comply with the terms of the divorce decree. While the magistrate recommended the defendant be given a credit against his future child support payments, the trial court chose to leave defendant's support payments as provided for in the decree. Instead, the court ordered plaintiff to liquidate the overpayment by other means within two years of the court's entry.
In her six assignments of error, plaintiff raises a myriad of objections to the trial court's decision. However, the simple issue in this case is whether the terms of the divorce decree can be enforced against the plaintiff, or, more precisely, whether the interlocutory orders which were incorporated into the divorce decree may be enforced by the defendant.
Under most circumstances, a temporary or interlocutory order in a domestic relations case merges into the final decree of divorce. Thus, any claimed arrearage, or in this case overage, must be reduced to either a judgment or incorporated in the final decree, or the claim will be lost. In Colom v. Colom (1979), 58 Ohio St.2d 245, the Ohio Supreme Court explained:
 * * * It is our view that not only should the interim orders be merged within the final judgment, but the right of action or enforcement of such interim orders should not be extended beyond the final decree unless specifically reduced to judgment or referred to within the decree. [Id. at 247.]
In Colom, supra, the court was confronted with the issue of whether an enforcement proceeding for the collection of an arrearage under a temporary order could be brought after the final divorce decree was filed, where the arrearage was not mentioned in the decree, and where there had not been a separate judgment entered upon the arrearage. The court explained in the syllabus:
 In a domestic relations action, interlocutory orders are merged within the final decree, and the right to enforce such interlocutory orders does not extend beyond the decree, unless they have been reduced to a separate judgment or they have been considered by the trial court and specifically referred to within the decree.
We find Colom indistinguishable from the facts of this case. As set forth above, the court's temporary orders were issued prior to the final decree. While those orders were interlocutory in nature, the parties specifically agreed in their divorce decree, as adopted by the trial court, that the temporary orders were to be incorporated and remain in effect in the final decree. Thus, the temporary orders were not extinguished by the decree. Because the temporary orders remain in effect, this case does not present a post-decree property division, and the trial court did not err when it enforced the temporary orders, awarding the defendant the amount overpaid under those orders. Finally, plaintiff failed to appeal the trial court's June 19, 1997 order setting the amount of the overpayment at $7,134.03. Accordingly, plaintiff's six assignments of error are therefore overruled.
Having overruled all six of plaintiff's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.
LAZARUS and GREY, JJ., concur.
 GREY, J., retired of the Fourth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.